**ARMINAK LAW APC**
330 North Brand Boulevard
Suite 920
Glendale, CA 91203
Telephone: (818) 584-2556
Facsimile: (818) 484-2556
www.arminaklaw.com
TAMAR G. ARMINAK (SBN 238677)
tamar@arminaklaw.com
NELLY S. ISPIRYAN (SBN 297260)
nelly@arminaklaw.com
PAT HARRIS (SBN 214545)
pat@patharrislaw.com
*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMVEL MANUKYAN, an individual; EDGAR TONOYAN, an individual; GOHAR VEZIRYAN, an individual; ALEXANDER RIGANYAN, an individual; JANET RIGANIAN, an individual; GREG RIGANIAN, an individual; VARTOUHI ARSENIAN, an individual; SAMVEL ASATRYAN, an individual; ANGELA BADEMYAN, an individual; E&A EXPRESS INC., a California corporation; EDGAR BEGLARIAN, an individual; MINAS BELLUYAN, an individual; LYUSYA BEZYAN, an individual; POGOS BABAJANIAN, an individual; DIANA BOSNOYAN, an individual; ARARAT CHIRKINIAN, an individual; VAZGEN DAVIDIAN, an individual; KARINE DAYAN, an individual; ARUTYUN DEMIRCHYAN, an individual; | **CASE NO.**<br><br>**COMPLAINT FOR:**<br>1. **VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT 15 U.S.C. § 1691 ET SEQ.**<br>2. **VIOLATION OF PLAINTIFFS EQUAL RIGHTS, 42 U.S.C. § 1981**<br>3. **VIOLATION OF 42 U.S.C. 1982**<br>4. **RACE, ANCESTRY, CITIZENSHIP, AND IMMIGRATION STATUS DISCRIMINATION UNRUH CIVIL RIGHTS ACT, CAL. CIVIL CODE §§ 51, 52(a)**<br>5. **RACE, ANCESTRY, CITIZENSHIP, AND IMMIGRATION STATUS** |

– 1 –
Complaint For Damages

RUZANNA DOGHRAMAJYAN, an individual;
DIANA ENDZHIGHOULIAN, an individual;
LOYAL CONSULTING GROUP, INC., a California corporation;
BABKEN GEVORGYAN, an individual;
NARINE GEVORKYAN, an individual;
RUSTAM GHAMBARYAN, an individual;
ARTYOM GHANDILYAN, an individual;
HOVIK GHARIBIAN, an individual;
LUSINEH GHOOKASIAN, an individual;
ARMAN GRIGORYAN, an individual;
DAVID GRIGORYAN, an individual;
JOSEPHINE HAKOPIAN, an individual;
KRISTINE HAKOBYAN, an individual;
ARIN HARTOUNIAN, an individual;
NARINE HARUTYUNYAN, an individual;
HENRIK ISKANDARYAN, an individual;
MANOUK KARAPETYAN, an individual;
REBEKA KENIAN, an individual;
PETROS KESABYAN, an individual;
ARTAK KHACHATRYAN, an individual;
SAMVEL KHACHATRYAN, an individual;
ARMEN KHACHATRYAN, an individual;
ZHANNA AYDINYAN, an individual;
SHAKE KHACHATRYIAN, an individual;
ANAIT KHALATYAN, an individual;
GEVORG MARKOSYAN, an individual;
KAREN MARTIROSYAN, an individual;
ANAHIT MATEVOSYAN, an individual;
MAYAN MATEVOSYAN, an individual;
AIDA MELKONYAN, an individual;
ARTAK MKRTCHYAN, an individual;
KARINE MKRTCHYAN, an individual;
GOR MOVSISYAN, an individual;
SEREJA NADARIAN, an individual;
ROUBIN NAZARIANS, an individual;
HAYKAZ NAZLUKHANYAN, an individual;

DISCRIMINATION UNRUH CIVIL RIGHTS ACT, CAL. CIVIL CODE §§ 51.5, 52(a)

6. **FRAUD / CONCEALMENT**

7. **FRAUD / INTENTIONAL MISREPRESENTATION**

8. **VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL") CAL. BUS. & PROF. CODE §§ 17200-17210**

9. **VIOLATION OF BUSINESS & PROFESSIONS CODE §17500 (UNTRUE OR MISLEADING ADVERTISING)**

10. **DECLARATORY RELIEF**

**DEMAND FOR JURY TRIAL**

RAFAEL NIKOGOSIAN, an individual;
OLEG TER OGANESIAN, an individual;
ARMEN OGANYAN, an individual;
MARIAM OGANYAN, an individual;
HAROUTYUN OHANIAN, an individual;
ROMAN POGHOSYAN, an individual;
LUSINE YAVRYAN, an individual;
HENRIK YAVRYAN, an individual;
ALVARD SAHRADYAN, an individual;
ARAM SARGSYAN, an individual;
HOVHANNES SARGSYAN, an individual;
HAYK SARGSYAN, an individual;
ANUSH SAROYAN, an individual;
ARSEN SEMERJYAN, an individual;
LYUDVIG SHAVARSHYAN, an individual;
SERGEY ISPIRYAN, an individual;
SARKIS SHATAREVIAN, an individual;
SHAKE SIMONYAN, an individual;
CATRIN TERIN, an individual;
ARMEN TOPCHYAN, an individual;
MARINE TOPUSHYAN, an individual;
PIRUZA VARDANIAN, an individual;
ARMEN VARTAZARYAN, an individual;
HERMINE VOSKANIAN, an individual;
AVIK YENOKIAN, an individual;
GEORGETTA YEPREMYAN, an individual;
ARUSYAK ANTONYAN, an individual;
ELMIRA YERITSYAN, an individual;
ELEONORA ZURNAJYAN, an individual;
GAGIK ARSHAKYAN, an individual;
LEN TRANSPORT, INC., a California corporation;
OKSANA ARSHAKYAN, an individual;
HOVAKIM ARSHAKYAN, an individual;
ARA SIMONYAN, an individual;
TIGRAN MELKONYAN, an individual;
SAMVEL MELKONYAN, an individual;
MELKON MELKONYAN, an individual;

Complaint For Damages

MARIAM KALADZHYAN, an individual;
TAGUI BAZSEGYAN, an individual;
SEVAN AYVAZIAN, an individual;
SHARIS KHASHAKI CHIGANI, an individual;
RUBEN GARSEVANYAN, an individual,

Plaintiffs,

v.

CITIBANK, N.A., a Delaware corporation, and DOES 1-100,

Defendants.

COME NOW Plaintiffs, by and through their attorneys ("Plaintiffs"), bring this Action against Defendants, Citibank, N.A., and DOES 1 through 100 (hereinafter, "Defendants") as follows:

## I. INTRODUCTION

1. Defendants have engaged in discriminatory practices, targeting the credit and banking accounts of its customers based upon their race, religion, ancestry, citizenship, and/or immigration status. Defendants have further taken adverse banking actions without any explanation or justification aside from stereotype-driven prejudices.

2. As an example of Defendants' discriminatory practices, Defendants identified Armenian customers through their last names which ended in YAN or IAN. It then closed Armenian-owned accounts without reason or justification. It refused credit and reduced credit limits for individuals identified as Armenian through their

last name. It froze and held SBA funds in accounts owned by Armenian American businesses. Citibank essentially did everything possible to terminate its financial relationship with Armenian Americans as a whole because of their ancestry and ethnic origin. When Defendants restricted or closed these accounts, it fabricated the reasons behind the acts, then blocked account holders, including Plaintiffs, from accessing their banking records.

3.    Because of Defendants' discriminatory practices, Plaintiffs have also been denied the opportunity to use or obtain financial services from Defendants, such as mortgages, personal loans, bank accounts, credit accounts, investment opportunities, and financial consulting services for several years.

4.    Plaintiffs have incurred direct and proximate damages, including financial losses, harm to their credit scores and history, lost time, confiscation of financial rewards points, and general financial upheaval in both their business and personal accounts due to Defendants' conduct. They have also suffered the indignity of discrimination, which is the most painful cut of all to a proud and honorable minority group in this country--a group who has long suffered at the hands of bias and prejudice.

5.    Plaintiffs felt humiliated and demeaned by Defendants' actions, having done nothing to deserve being treated like criminals. They worried that they would be unable to avail themselves of future financial services with Defendants and other financial institutions as the result of this experience.

Complaint For Damages

6.      Defendants' conduct against Plaintiffs is an example of a larger pattern of discrimination against persons based upon their race, religion, ancestry, citizenship, and/or immigration status.

7.      This case seeks protection and relief for persons of all ethnic backgrounds who have suffered, or who will suffer in the future, due to the Defendants' discriminatory business practices. These practices include targeting specific groups of people, terminating their banking relationships, or denying them benefits. Plaintiffs seek by way of this suit to prevent Defendants from ever again implementing policies, algorithms, or automated systems that discriminate against specific groups of people based upon their ethnic background, last names, or geographic locations.

## II. JURISDICTION, VENUE AND GOVERNING LAW

8.      This Court has jurisdiction over this action under 28 U.S.C. Section 1332 because this action is between parties domiciled and citizens of different states; California on the one hand for Plaintiffs and Delaware on the other for Defendant, Citibank. Furthermore, the aggregated amount of damages incurred by Plaintiffs exceeds the jurisdictional minimum of this Court, excluding interests and costs of suit.

9.      This action arises out of the Defendants' violations of the ECOA, 15 U.S.C. § 1691 et seq., and Plaintiffs' equal rights under the law as defined under 42 U.S.C. § 1981 and 1982, and the Unfair Competition Law, Bus. & Prof. Code §

17200 et seq. This action also arises out of Defendants' violations of the California Unruh Act.

10. The Court has personal jurisdiction over Defendants because they conduct substantial business in California, with millions of customers in this District alone. Defendants have significant minimum contacts with California and have otherwise availed themselves to the District through sales of its products and services in search of California resident customers and California generated profits. These contacts are sufficient to allow the exercise of jurisdiction by this Court over Plaintiffs' claims, and to place Defendants on notice that it may be hauled into a California District Court.

11. Venue is proper in this District under 28 U.S.C. Section 1391(b)(2) and (3) because a substantial part of the events or actions giving rise to Plaintiffs' claims occurred in this District. Indeed, Plaintiffs allege that Defendants specifically targeted Armenian Americans residing in this District with its actions and omissions.

### III. PARTIES

12. Plaintiffs are Armenian American individuals or Armenian American owned corporations who are, and were at all relevant times, residents of the County of Los Angeles. Plaintiffs were all Citibank customers with Citibank credit cards, bank accounts and SBA loans.

13. Defendants Citibank, N.A has branches and operations throughout the United States, including California, where it boasts millions of customers. Hereinafter

referred to as "Defendants" are Citibank, their agents, representatives and/or principals.

14.     Plaintiffs identify DOE Defendants 1 through 50 as individuals working at various branches of Citibank in Glendale, Pasadena, North Hollywood, Burbank, Studio City and the surrounding cities in Los Angeles County, in the capacities of branch managers and personal bankers. DOE Defendants were at all times acting as actual agents, conspirators, ostensible agents, partners and/or joint ventures and co-employees of all other Defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy, and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants.

15.     Plaintiffs identify DOE Defendants 50 through 100 as representatives, agents, principals, officers, directors, executives, policymakers, compliance and risk management personnel, and/or affiliated corporate entities of Citibank, N.A., and/or its parent and subsidiary companies. These DOE Defendants were responsible for developing, approving, directing, and/or enforcing Citibank's company-wide policies and practices, including those governing customer account monitoring, restrictions, and closures. These DOE Defendants were at all times acting as actual agents, conspirators, ostensible agents, partners, and/or joint venturers, and co-employees of all other Defendants. Plaintiffs allege that all acts and omissions described herein occurred within the course and scope of said agency, employment, partnership, joint

venture, conspiracy, and/or enterprise, and with the express and/or implied permission, knowledge, consent, authorization, and ratification of their co-Defendants. Plaintiffs further allege that these DOE Defendants, in their corporate and policymaking capacities, directed, authorized, or knowingly permitted the discriminatory account closure practices targeting individuals of Armenian descent and members of the Armenian community.

## IV. FACTUAL ALLEGATIONS

16.     Plaintiffs incorporate and reallege each paragraph above as though fully set forth herein.

17.     Defendants have finally been caught doing what can only be described as reprehensible, despicable, and a deplorable pattern of business conduct, characterized by wholesale discrimination and retaliation against Armenian Americans solely based on their ethnicity and ancestry.

18.     On November 8, 2023, the public learned that Citibank had been ordered to pay $25.9 million in fines for intentionally and illegally discriminating against Armenian Americans since 2015. Defendants targeted individuals whose last names ended in IAN or YAN, knowing that by doing so, it would be able to easily exclude and discriminate against an entire group of people based on their national origin and ethnic ancestry. For years, Defendants lied to the public and concealed its fraud.

19.     Labeling Armenians in California, namely those living in the San Fernando Valley area of Los Angeles, as "criminals" who were more likely to engage

in fraud than non-Armenians, Defendants had a corporate-wide policy of refusing credit to those of Armenian descent by closing bank accounts of loyal customers without reason or notice, refusing credit lines and mortgages, lowering lines of credit and credit limits, blocking accounts and even denying access to banking records.

20.      Plaintiffs believe and allege that this discriminatory practice even bled into Citibank-affiliated retail credit cards like Macy's, Bloomingdale's and Costco credit cards. Plaintiffs who were clearly qualified for these credit cards were rejected by the automatic application process at the retailers without explanation. Plaintiffs believe and allege that Defendants likely built in an algorithm into their credit application software to weed out Armenian American credit applicants based on their last names.

21.      Plaintiffs are all victims of Defendants' illegal and despicable conduct. Plaintiffs' accounts were closed without explanation. Plaintiffs were lied to by Defendants' representatives. Plaintiffs were blocked from accessing their banking records and sometimes blocked from accessing their funds. Plaintiffs retail credit cards were closed without notice, with their spending points and rewards forfeited. Plaintiffs were denied lines of credit and credit cards, and when their existing credit limits were reduced, their credit scores were adversely affected. Plaintiffs even had their commercial accounts closed and mortgages refused, sending their businesses into financial havoc. Not a single Plaintiff was given a reason for these discriminatory actions, nor does a legitimate non-discriminatory reason exist.

Complaint For Damages

22.    Indeed, the Consumer Financial Protection Bureau found that Defendants lied to Plaintiffs, and actually fabricated documents to cover up its illegal activity. Worse yet, although Defendants assured Plaintiffs that they would have access to their banking records for 24 months following the closure of their accounts, they were instead immediately and permanently locked out, further covering up Defendants' actions.

23.    Plaintiffs have suffered adverse effects after the financial carnage caused by Defendants' discrimination, including lower credit scores, missed automatic payments, lost automatic deposits, lost rewards points, forced refinancing, and hours and hours spent scrambling to mitigate the damage from suddenly having their accounts closed. Others were left shocked, embarrassed, and humiliated after being denied credit for which they clearly qualified, with many feeling as though they were treated like common criminals.

24.    Plaintiffs seek declaratory and injunctive relief to prevent Defendants from engaging in discriminatory practices that deny any person, not just the Plaintiffs herein, the full and equal accommodations, advantages, facilities, and services of Defendants' business based upon their race, religion, ancestry, citizenship, and/or immigration status.

///

## <u>FIRST CAUSE OF ACTION</u>

## **VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT 15 U.S.C. § 1691 ET SEQ.**

**(By Plaintiffs against All Defendants)**

25. Congress enacted the Equal Credit Opportunity Act making it "unlawful for any creditor to discriminate against any applicant with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a).

26. Plaintiffs are natural person or companies owned by natural person and "applicants" as defined by the ECOA.

27. The ECOA defines an "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." *Id*.

28. Plaintiffs also meet the definition of "applicant" supplied by the Bureau of Consumer Financial Protection (the "Bureau"). 12 C.F.R. § 202.2. "Applicant" is defined by the Bureau as "any person who requests or who has received an extension of credit from a creditor and includes any person who is or may become contractually liable regarding an extension of credit." *Id*.

29. The Bureau's definition of "applicant" is applicable here based on the authority granted by Congress to the agency to promulgate regulations to achieve the goals of the ECOA. 15 U.S.C. § 1691b. Additionally, the statute provides that courts should defer to the interpretation of the Bureau regarding any provision of the ECOA

"as if that agency were the only agency authorized to apply, enforce, interpret, or administer" it. *Id.*, § 1691b(g).

30.    Pursuant to the ECOA, the broader definition of "applicant" supplied by the Bureau is given deference, and thus applies to Plaintiffs as persons who have requested and received credit from Defendants and have become contractually liable for that credit.

31.    Because Plaintiffs would continue to remain contractually liable for any balance on their credit account, Plaintiffs meet the definition of applicants.

32.    Defendants is a "creditor" as defined by the ECOA. Defendants "regularly extends, renews, or continues credit." 15 U.S.C. § 1691a(e).

33.    The action of Defendants in refusing credit to Plaintiffs, closing bank accounts of Plaintiffs without reason or notice, refusing credit lines and mortgages, lowering lines of credit and credit limits, blocking accounts and even denying access to banking records, qualifies as an adverse action" as defined by the ECOA, i.e., "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." 15 U.S.C. § 1691(d)(6).

34.    As described above, Defendants have intentionally, knowingly, and purposefully engaged in a number of discriminatory practices that deny persons of Armenian descent access to credit through Defendants' business based on their national origin and ethnic ancestry.

35.    The ECOA also requires creditors to notify and explain any adverse decision in a timely fashion:

(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken; or giving written notification of adverse action which discloses (i) the applicant's right to a statement of reasons within thirty days after receipt by the creditor of a request made within sixty days after such notification, and (ii) the identity of the person or office from which such statement may be obtained…

(3) A statement of reasons meets the requirements of this section only if it contains the specific reasons for the adverse action taken.

36.    A notice requirement was included in the statute as one way to ensure that creditors do not unlawfully act discriminatorily. *Schlegal v. Wells Fargo*, 720 F.3d 1204, 1210 (9th Cir. 2013).

37.    While the ECOA was enacted for the purpose of preventing discrimination in the granting of credit by creditors, affirmative evidence of discrimination is not necessary to state a claim when a creditor fails to meet the statute's notice requirement. *Costa v. Mauro Chevrolet, Inc, et. al.*, 390 F. Supp. 2d 720 (N.D. Ill. 2005).

///

38.    In *Costa*, the court held that "without regard to allegations of discrimination, a creditor's failure to provide a written rejection notice is actionable under the ECOA." *Id*. at 728. Additionally, the court reasoned that "because § 1691(d) of the ECOA sets forth a notification requirement separate and apart from the statute's antidiscrimination provisions … [ Plaintiffs'] allegation that [Defendants] failed to provide written notification of an adverse credit action is sufficient to establish an ECOA claim." *Id*. at 729.

39.    Similarly, here, Defendants' failure to provide a statement of reasons upon Plaintiffs' request regarding refusal of credit, closure of bank accounts, refusal of credit lines and mortgages, lowered lines of credit and credit limits, blocked accounts, and denied access to banking records is sufficient to create a cause of action under the ECOA, § 1691(d).

40.    Defendants, including DOES 1 through 100, lied to Plaintiffs in blocking them from accessing their banking records and sometimes blocked them from accessing their funds.

41.    A statement of reasons meets the requirements of the ECOA "only if it contains the specific reasons for adverse action taken." § 1691(d)(3). Defendants provided no specific reasons at all for the rejection of Plaintiffs' credit cards and the closure of Plaintiffs' bank accounts and credit cards other than its decision was made following the results of a review of bank information and records. This reason was false and misrepresented the true nature of the bank's discriminatory conduct toward

Armenian Americans. Given these facts, and the Consumer Financial Protection Bureau's findings of November 8, 2023, Defendants' stated reasons appear to be mere pretexts for discrimination based on Plaintiffs' Armenian heritage, origin and/or nationality.

42.    The Ninth Circuit has followed the plain meaning of "revocation" and held that cancelling the right to defer payment of a debt rightfully gives rise to a cause of action under the ECOA. *Schlegal*, 720 F.3d at 1211 (9th Cir. 2013). There, the court held that Defendants bank failed to abide by the terms of a loan modification made between the parties, and the court held that this constituted an adverse action under the statute. *Id*.

43.    Similarly, here, Defendants revoked Plaintiffs' right to defer payment of a debt by closing Plaintiffs' accounts and failing to provide a sufficient statement of reasons for doing so.

44.    The written communications from Defendants were defective and in violation of the ECOA because they failed to provide a statement of specific reasons as to why Defendants refused credit to Plaintiffs, closed their bank accounts without reason or notice, denied them credit lines and mortgages, lowered their lines of credit and credit limits, blocking their accounts, and even denying access to banking records.

///

Complaint For Damages

45. Due to Defendants' failure to provide a statement of reasons for its decision to take adverse action against Plaintiffs, they are entitled to relief under the ECOA.

46. On information and belief, Defendants' actions were willful, wanton, fraudulent, and made with conscious disregard. Citibank's efforts to conceal this illegal and discriminatory conduct by instructing its employees to not put anything as to the discriminatory reasons for the credit denials in writing and only was also malicious.

47. Congress has created civil liability for any creditor that fails to comply with the terms of the ECOA. 15 U.S.C. § 1691e(a). A creditor who does not meet the requirements imposed by the act becomes "liable to the aggrieved applicant for any actual damages sustained by such applicant." *Id*. Additionally, punitive damages may be granted to up to $10,000. *Id*., § 1691e(b).

48. In addition to actual damages, aggrieved applicants may be entitled to equitable and declaratory relief pursuant to § 1691e(c), as individuals who have been wrongfully discriminated against and are seeking a public injunction for all those who have been discriminated against due to their national origin and ethnic ancestry. They can also collect reasonable attorneys' fees. 15 U.S.C. § 1691e(d). As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered damages in an amount which shall be proven at trial.

///

49.      Plaintiffs also seek declaratory and injunctive relief to prevent Defendants from engaging in discriminatory practices that deny any person, not just the Plaintiffs herein, the full and equal accommodations, advantages, facilities, and services of Defendants' business based upon their race, religion, ancestry, citizenship, and/or immigration status.

## SECOND CAUSE OF ACTION
## VIOLATION OF PLAINTIFFS EQUAL RIGHTS, 42 U.S.C. § 1981
### (By Plaintiffs against All Defendants)

50.      Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

51.      Federal law provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, and penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a).

52.      The right to "make and enforce contracts" is defined as including the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

///

53.     Further, "the rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

54.     In order to assert a claim under § 1981, Plaintiffs must: …initially identify an impaired contractual relationship under which the Plaintiff has rights. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006).

55.     Plaintiffs must also plausibly allege that Defendants impaired that relationship on account of intentional discrimination. See *Gen. Bldg. Contractors Ass'n, Inc. v. Pa.*, 458 U.S. 375, 391, 102 S. Ct. 3141, 73 L. Ed. 2d 835 (1982) (holding that "§1981 ... can be violated only by purposeful discrimination"). *Astre v. McQuaid*, No. 18-17231, 2020 U.S. App. LEXIS 9297, at *2 (9th Cir. Mar. 25, 2020).

56.     Plaintiffs' complaint more than adequately pleads a prima facie discrimination claim under Section 1981.

57.     Defendants here acted discriminatorily by refusing credit to Plaintiffs, closing their bank accounts without reason or notice, denying them credit lines and credit cards, lowering their lines of credit and credit limits, blocking their accounts with holding and retaining their money, and even denying access to banking records, thereby denying them the equal opportunity to enjoy the benefits of their contractual relationship.

58.    Defendants had knowledge that Plaintiffs are Armenian and/or Defendants perceived Plaintiffs as such. This act of discrimination was intentional and based on Plaintiffs' national origin. In clear violation of federal law, Defendants used Plaintiffs' Armenian last names to identify them and wholesale discriminate against them.

59.    Plaintiffs' allegations that accounts were restricted or closed for discriminatory purposes is further bolstered by (1) the fact that Defendants stated no reasons for refusing credit to Plaintiffs, closing their bank accounts without reason or notice, denying them credit lines and credit cards, lowering their lines of credit and credit limits, blocking their accounts, and even denying access to banking records; (2) the fact that Defendants elected not to provide any written explanation for Plaintiffs' accounts closure in violation of ECOA; (3) evidence of Defendants' pattern of similar behavior against persons of Armenian origin during the same timeframe; (4) preventing Plaintiffs from later being able to access their account details upon closure of their accounts. As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered damages in an amount which shall be proven at trial.

60.    Plaintiffs also seek declaratory and injunctive relief to prevent Defendants from engaging in discriminatory practices that deny any person, not just the Plaintiffs herein, the full and equal accommodations, advantages, facilities, and

services of Defendants' business based upon their race, religion, ancestry, citizenship, and/or immigration status.

## THIRD CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. 1982
### (By Plaintiffs against All Defendants)

61.    Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set forth herein.

62.    Plaintiffs bring this claim for violation of 42 U.S.C. §1982.

63.    42 U.S.C. §1982 states: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

64.    Defendants intentionally discriminated against Plaintiffs in violation of Section 1982 by refusing credit, closing bank accounts, denying credit lines, lowering lines of credit and credit limits, blocking accounts and holding funds belonging to Plaintiffs, and even denying access to banking records for clients of Armenian national origin or perceived of being as Armenian descent.

65.    The acts of Defendants, as enumerated herein, constitute violations of the rights of Plaintiffs, under 42 U.S.C. §1982, in that Defendants has denied and deprived and has continued to deny and deprive Plaintiffs' rights that are afforded to other financial customers of Defendants who are of non-Armenian descent and national origin.

///

66.    The aforesaid acts of Defendants have resulted in causing financial injury to Plaintiffs in that they lost time, they lost credit card reward points, missed automatic payments, lost automatic deposits, lost rewards points, and suffered financial hardships arising from the sudden loss of their accounts, forced refinancing, and hours and hours spent scrambling to mitigate the damage from suddenly having your accounts closed including damage to their credit history.

67.    Upon information and belief, the aforesaid acts of Defendants have resulted in causing embarrassment, indignity and humiliation to Plaintiffs who were treated like common criminals. As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered damages in an amount which shall be proven at trial.

68.    Plaintiffs also seek declaratory and injunctive relief to prevent Defendants from engaging in discriminatory practices that deny any person, not just the Plaintiffs herein, the full and equal accommodations, advantages, facilities, and services of Defendants' business based upon their race, religion, ancestry, citizenship, and/or immigration status.

**FOURTH CAUSE OF ACTION**
**RACE, ANCESTRY, CITIZENSHIP, AND IMMIGRATION STATUS DISCRIMINATION UNRUH CIVIL RIGHTS ACT,**
**CAL. CIVIL CODE §§ 51, 52(a)**
**(By Plaintiffs against Defendants)**

69.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

– 22 –
Complaint For Damages

70.    The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. 3 Code § 51(b).

71.    "The purpose of the [Unruh] Act is to create and preserve a non-discriminatory environment in California business establishments by banishing or eradicating the arbitrary, invidious discrimination by such establishments. The Act stands as a bulwark protecting each person's inherent right to full and equal access to all business establishments. In enforcing the act, courts must consider its broad remedial purpose and overarching goal of deterring discriminatory practices by businesses. The act must be construed liberally in order to carry out its purpose." *White v. Square, Inc.*, 7 Cal. 5th 1019, 1025 (2019).

72.    Defendants is a business establishment under the Unruh Act, because: there are several fixed locations of business in California; it has an online place of business that sells services to consumers throughout California; its primary purpose and goal in operating its business is to generate revenue, and earn profit; and indeed, Defendants earned millions of dollars in revenue from its business activities in California.

///

– 23 –
Complaint For Damages

73.    As described above, Defendants has intentionally, knowingly, and purposefully engaged in a number of discriminatory practices that deny persons of Armenian descent the full and equal accommodations, advantages, facilities, and services of Defendants' business based on their race, religion, ancestry, citizenship, and/or immigration status, including but not limited to: grouping and targeting them with account restriction and/or closure; restricting and closing their accounts and thereby excluding them from receiving financial services; and denying them the benefits of Defendants' services, including, but not limited to, lost accrued credit card reward points.

74.    Defendants are liable to Plaintiffs for statutory damages pursuant to section 52(a) of the California Civil Code for each and every offense, as well as attorneys' fees, costs, and expenses incurred in bringing this action.

75.    Plaintiffs are further entitled to all other legal and equitable relief available, including injunctive relief.

76.    Plaintiffs seek declaratory and injunctive relief to prevent Defendants from engaging in discriminatory practices that deny any person, not just the Plaintiffs herein, the full and equal accommodations, advantages, facilities, and services of Defendants' business based upon their race, religion, ancestry, citizenship, and/or immigration status.

///

**FIFTH CAUSE OF ACTION**
**RACE, ANCESTRY, CITIZENSHIP, AND IMMIGRATION STATUS DISCRIMINATION UNRUH CIVIL RIGHTS ACT,**
**CAL. CIVIL CODE §§ 51.5, 52(a)**
**(By Plaintiffs against Defendants)**

77.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

78.    Section 51.5 of the California Civil Code provides that "[n]o business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on accounts of any characteristic listed or defined in subdivision (b) or (e) of Section 51 … because the person is perceived to have one or more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics."

79.    Through the actions described above, Defendants have intentionally discriminated against, boycotted, and/or refused to provide services to persons of Armenian descent based on their race, religion, ancestry, citizenship, and/or immigration status, including by restricting and closing their banking and/or credit accounts for no legitimate reason.

80.    Defendants are liable to Plaintiffs for statutory damages pursuant to section 52(a) of the California Civil Code for each and every offense, as well as attorneys' fees, costs, and expenses incurred in bringing this action.

81.    Plaintiffs are further entitled to all other legal and equitable relief available, including injunctive relief.

82.    Plaintiffs also seek declaratory and injunctive relief to prevent Defendants from engaging in discriminatory practices that deny any person, not just the Plaintiffs herein, the full and equal accommodations, advantages, facilities, and services of Defendants' business based upon their race, religion, ancestry, citizenship, and/or immigration status.

## SIXTH CAUSE OF ACTION
### FRAUD / CONCEALMENT
### (By Plaintiffs against Defendants)

83.    Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set forth herein.

84.    Defendants actively concealed and failed to disclose the following facts:

a.    Defendants' supervisors and trainers instructed Defendants' employees to conceal their reliance on the credit decision on applicants' last names ending in -ian or -yan and addresses in or around Glendale, California, including by telling Defendants' employees not to discuss it in writing or on recorded phone lines. For example, in 2016, a Citi employee with authority to approve or deny Citi Retail Services Credit Card Applications messaged another employee, "[i]t's been a while since I declined for possible credit abuse/YAN—gimme some reasons I can use, or do I need to not worry about it?" The other employee responded with several apparently pretextual reasons

the first employee could use. Just one second later, the first employee replied that the application was "declined due to possible credit abuse."

b.      Defendants took corrective action against employees if they failed to identify and deny applications if the applicant's last name ended in -ian or -yan and the address was in or around Glendale, California, including action that could affect the agent's performance rating, pay, and authority to approve future Citi Retail Services Credit Card Applications.

c.      Defendants actively fabricated documents to cover up its illegal activity and avoided recording decisions on phone lines or in writing to evade accountability and conceal the discriminatory nature of its actions.

d.      Defendants falsely told Plaintiffs that they would still have access to their banking records for 24 months after the closure of their accounts and instead permanently locked Plaintiffs out of their accounts immediately.

e.      This practice persisted even after concerns about denying applicants based on an address in Glendale were raised by Citi employees. For example, in 2018, a Citi employee sent an email to a group manager of Citi Retail Services and others, asking for advice about how to document adverse action reasons, stating "we can't tell [customers they are being declined] because they are in Glendale."

85.      Despite being aware that its actions violated banking laws prohibiting discrimination based on national origin, Defendants knowingly and intentionally

failed to disclose or admit to such discriminatory practices. DOE Defendants 1 through 100 continued the fraud at the local level, as branch managers and personal bankers, when they knowingly provided false information to customers regarding the reasons for their account closures.

86.     Plaintiffs did not know and were prevented from discovering the facts stated above, as such these facts were only known to Defendants.

87.     Defendants intended to deceive Plaintiffs by concealing the true reasons for credit card application denials, attributing them to legitimate, non-discriminatory factors.

88.     If the above information had been disclosed, Plaintiffs would never have participated in a financial relationship with Defendants.

89.     Plaintiffs suffered significant harm, including but not limited to financial losses, damage to creditworthiness, and emotional distress, as a direct and proximate result of Defendants' conduct, in an amount according to proof at trial.

90.     Furthermore, Defendants' concealment of the abovementioned facts was a substantial factor in causing Plaintiffs' harm.

91.     Plaintiffs also seek declaratory and injunctive relief to prevent Defendants from engaging in discriminatory practices that deny any person, not just the Plaintiffs herein, the full and equal accommodations, advantages, facilities, and services of Defendants' business based upon their race, religion, ancestry, citizenship, and/or immigration status.

## SEVENTH CAUSE OF ACTION
### FRAUD / INTENTIONAL MISREPRESENTATION
### (By Plaintiffs against Defendants)

92.   Plaintiffs incorporate and re-allege each of the paragraphs above as though fully set forth herein.

93.   Defendants intentionally and knowingly misrepresented to Plaintiffs the following facts as true:

a.   Defendants affirmatively promoted credit card applications, credit lines, and loans to Plaintiffs while concealing a discriminatory practice of systematically subjecting credit card applications from individuals of Armenian national origin to heightened scrutiny, negative assessments, and frequent denials.

b.   Defendants falsely portrayed itself as a fair and unbiased financial institution, deliberately concealing the fact that it engaged in discriminatory conduct against individuals of Armenian American descent.

c.   Defendants told Plaintiffs that they would still have access to their banking records for 24 months after the closure of their accounts, and instead permanently locked Plaintiffs out of their accounts immediately.

94.   Defendants knew or should have known that its false representations would induce Plaintiffs to rely on the accuracy of the information provided when applying for credit cards, loans, and opening bank accounts.

Complaint For Damages

95. Plaintiffs did not know and were prevented from discovering the facts stated above, and therefore, reasonably relied on them to open their bank accounts and/or apply for any type of credit card.

96. Plaintiffs suffered significant harm, including but not limited to financial losses, damage to creditworthiness, and emotional distress, as a direct result of Defendants' fraudulent misrepresentation, in an amount according to proof at trial.

97. Plaintiffs' reliance on Defendants' representation was a substantial factor in causing Plaintiffs' harm.

98. Plaintiffs also seek declaratory and injunctive relief to prevent Defendants from engaging in discriminatory practices that deny any person, not just the Plaintiffs herein, the full and equal accommodations, advantages, facilities, and services of Defendants' business based upon their race, religion, ancestry, citizenship, and/or immigration status.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL") CAL. BUS. & PROF. CODE §§ 17200-17210**
**(By Plaintiffs against Defendants)**

99. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

100. The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Defendants' conduct violates each of these prohibitions.

### a. Unlawful Conduct

101.   Defendants' conduct is unlawful because, as set forth herein, it violates Title VII, ECOA the Civil Rights Act of 1866, and the California Unruh Civil Rights Act, among other laws.

### b. Unfair Conduct

102.   Defendants' conduct is unfair because it violated state and federal public policy, including those declared under civil rights law, which demand equal rights and treatment under the Law and under ECOA, which requires a satisfactory written explanation for adverse credit actions.

103.   Defendants acted in an immoral, unethical, oppressive, and unscrupulous manner, in at least the following respects:

a.   Targeting Plaintiffs to restrict and/or close financial accounts because of their race, religion, ancestry;

b.   Misrepresenting to Plaintiffs the reasons for the imposition of arbitrary actions on their accounts; and

c.   Failing to provide a truthful written communication that states the accounts of Plaintiffs will be restricted and/or closed and the reasons for the restriction and/or closure;

104.   The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of discrimination has gravely harmed Plaintiffs with no countervailing benefit.

105.    The harm from Defendants' unfair conduct was not reasonably avoidable by consumers. Plaintiffs did not know and could not have known that Defendants would discriminate against them and in the manner that it did.

### c. Fraudulent Conduct

106.    Defendants' fraudulent acts include knowingly misrepresenting to, and concealing from, Plaintiffs the true discriminatory reasons for restricting and/or closing their accounts.

107.    At all relevant times, Defendants had a duty to disclose its discriminatory practices because it had superior and exclusive knowledge of the practices, which affects the central functionality of the accounts (e.g., remaining open for use).

108.    Accordingly, Plaintiffs have suffered injuries in fact, including lost money, rewards points, and time, as a result of Defendants' unlawful, unfair, and fraudulent acts. Absent these acts, Plaintiffs' accounts would have remained open, and Plaintiffs would have retained their money, credit scores, lines of credit, mortgages, rewards points, and lost time.

109.    Plaintiffs seek appropriate relief under the UCL, including such orders as may be necessary: (a) to enjoin Defendants from continuing this unlawful, unfair, and fraudulent acts or practices, and (b) to restore Plaintiffs to the position they were in prior to Defendants' despicable conduct.

///

110.    Plaintiffs also seek reasonable attorneys' fees and expenses under applicable law.

111.    Plaintiffs also seek declaratory and injunctive relief to prevent Defendants from engaging in discriminatory practices that deny any person, not just the Plaintiffs herein, the full and equal accommodations, advantages, facilities, and services of Defendants' business based upon their race, religion, ancestry, citizenship, and/or immigration status.

**NINTH CAUSE OF ACTION**
**VIOLATION OF BUSINESS & PROFESSIONS CODE §17500**
**UNTRUE OR MISLEADING ADVERTISING**
**(By Plaintiffs against Defendants)**

112.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

113.    Business and Professions Code section 17500 states in pertinent part as follows:

114.    "It is unlawful for any person, firm corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state . . . in any newspaper or other publication, or any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement,

concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

115.     Defendants affirmatively published and advertised on the internet, including but not limited to, "https://www.citi.com," through unsolicited emails, unsolicited mailings, television commercials, print materials, and radio advertisements, advertisements for credit card applications, credit lines, and loans. The advertisements, inter alia, stated that Plaintiffs were pre-qualified to become customers if they met the eligibility requirements and would gain the advantages of being customers.

116.     The advertisements were intended to be seen by the public, including Plaintiffs.

117.     The advertised statements and representations were misleading at the time they were made as Defendants never mentioned that eligibility would take into account an individual's ethnicity or racial background.

118.     Defendants engaged in discriminatory conduct against individuals of Armenian American descent by systematically subjecting credit card applications from individuals of Armenian national origin to heightened scrutiny, negative assessments, and frequent denials.

Complaint For Damages

119.    Defendants made false or misleading statements of fact in the advertisement in order to induce Plaintiffs to rely on the accuracy of the information provided when applying for credit cards, loans, and opening bank accounts.

120.    Defendants knew or should have known the representations in the advertisement were untrue or misleading.

121.    Plaintiffs did not know and were prevented from discovering the facts stated above, and therefore, reasonably relied on them to open bank accounts and/or apply for any type of credit card.

122.    Plaintiffs' reliance on Defendants' representation was a substantial factor in causing Plaintiffs' harm.

123.    The statements by Defendants in the advertisements deceived Plaintiffs and had the capacity to deceive a substantial number of potential customers.

124.    The false or misleading statements of Defendants were material in that they influenced Plaintiffs' applications for credit cards, loans, and bank accounts and/or were likely to influence a customer's application at Citibank.

125.    As a proximate and direct cause of Defendants' false advertising, Plaintiffs have been significantly harmed, including but not limited to financial losses, damage to creditworthiness, and emotional distress, in an amount according to proof at trial.

126.    Plaintiffs also seek declaratory and injunctive relief to prevent Defendants from engaging in unlawful, unfair, and fraudulent, discriminatory acts or

practices that deny any person, not just the Plaintiffs herein, the full and equal accommodations, advantages, facilities, and services of Defendants' business based upon their race, religion, ancestry, citizenship, and/or immigration status.

## TENTH CAUSE OF ACTION
### DECLARATORY RELIEF
### (By Plaintiffs against Defendants)

127. Plaintiffs incorporate by this reference all preceding paragraphs as though fully set forth in full herein.

128. Plaintiffs hereby seek a declaration of the respective rights and duties of the parties.

129. In particular, Plaintiffs request a declaration that:

a. Defendants discriminated against a group of persons based upon their race, religion, ancestry, citizenship, and/or immigration status.

b. Defendants denied eligibility to potential customers based upon said persons' race, religion, ancestry, citizenship, and/or immigration status.

c. Defendants restricted and/or terminated accounts due to persons' race, religion, ancestry, citizenship, and/or immigration status.

130. Accordingly, this is a proper subject for declaratory relief; and an actual controversy exists between the Parties involving justiciable questions relating to their rights or obligations.

131.    Plaintiffs also seek injunctive relief as follows:

a.    Prohibiting Defendants from engaging in discriminatory practices that deny any person, not just the Plaintiffs herein, full and equal access to the accommodations, advantages, facilities, and services of Defendants' business based upon their race, religion, ancestry, citizenship, and/or immigration status. This includes, but is not limited to practices, involving the use of systematic protocols/algorithms to terminate and/or refuse persons of certain ethnic origins or persons in certain geographical locations the benefits of Defendants' services.

132.    Accordingly, Plaintiffs are entitled to declaratory relief and injunctive relief.

## VI. RELIEF SOUGHT

WHEREFORE, Plaintiffs pray for judgment as follows:

A. Declare that the practices complained of herein are unlawful;

B. Enter an order permanently enjoining Defendants and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, from continuing to engage in the unlawful, unfair, and fraudulent acts complained of herein;

C.  Award actual damages pursuant to 15 U.S.C. § 1691e(a); Cal. Civ. Code § 52(2); and other applicable law.

D.  Award punitive damages pursuant to pursuant to 15 U.S.C. § 1691e(b); 42 U.S.C. § 1981a(b)(1); 42 U.S.C. § 1982; Cal. Civ. Code § 52(b); and other applicable law;

E.  Award declaratory relief, restitution for monies wrongfully obtained, injunctive relief, and other relief allowable under Business and Professions Code section 17203, including but not limited to enjoining Defendants from continuing to engage in its unfair, unlawful, and/or fraudulent conduct alleged herein.

F.  Award statutory damages and equitable relief;

G.  Award pre-judgment and post-judgment interest on such monetary relief;

H.  Enter a judgment in favor of Plaintiffs, and against Defendants for an amount of damages to be determined at trial;

I.  Award Plaintiffs attorneys' costs and fees;

J.  Appoint a monitor to ensure that Defendants complies with the injunction provisions of any decree that the Court orders;

K.  Declaratory relief;

L.  Injunctive Relief; and

///

M. Grant such further relief that this Court deems appropriate.

DATED: November 5, 2025             **ARMINAK LAW, APC**

By: *s/ Tamar G. Arminak*
    TAMAR G. ARMINAK
    PAT HARRIS
    NELLY S. ISPIRYAN
    *Attorneys for Plaintiffs*

///

**Complaint For Damages**

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues triable as of right by jury.

DATED: November 5, 2025                        **ARMINAK LAW, APC**


                                        By: s/*Tamar G. Arminak*
                                            TAMAR G. ARMINAK
                                            PAT HARRIS
                                            NELLY S. ISPIRYAN
                                            *Attorneys for Plaintiffs*